UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**        **(In Chambers)**

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.**
**INTRODUCTION**

For 22 years Plaintiff Eferon Musgraves worked for Kmart stores in California in a variety of capacities ultimately leading to his promotion to store manager. He held the position of store manager in Ontario until 2003 when he was transferred to Ridgecrest, a 60-employee store with annual sales of approximately $7 million. In 2006 he was promoted to manager of the Big Bear store which had annual sales of approximately $14 million and which employed 100 associates, including four assistant managers, a human resources assistant, loss prevention personnel, nine to ten hourly lead employees, and dozens of lower level hourly employees who were responsible for the numerous tasks necessary in the daily operation of a retail business establishment. As the most senior resident manager at each of these stores, he was paid an annual salary of more than $80,000, and was responsible for all aspects of store operations, including its profitability. Like all other Kmart store managers, Musgraves was classified as "exempt" under applicable California labor laws.

In 2007, Musgraves' star went into decline, and after four years of increasingly negative reviews, he was terminated. His termination has generated two lawsuits—one for alleged discrimination and retaliation and this putative class action lawsuit for violation of California's wage and hour laws. In this case, he seeks recovery of overtime compensation, compensation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
| --- | --- | --- | --- |
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

for meal breaks and rest periods, and a variety of other compensation items and penalties. He contends that he is entitled to such compensation because his "exempt" classification violated California labor laws. More particularly, he claims that, in his last seven years working at Kmart, he performed more non-exempt than exempt duties and that he is therefore entitled to overtime and other benefits payable to non-exempt employees.

Even assuming for purposes of this motion that Musgraves in fact spent more that 50 percent of his time on non-exempt chores, the Court must inquire further. Under California law an employee cannot, through incompetence, attain non-exempt status and the concomitant benefits available to non-exempt employees under California law. Ramirez v. Yosemite Water Co., Inc., 978 P.2d 2, 13–14 (Cal. 1999). The Court must consider the job description and whether the employer's expectations that the employee would perform predominantly exempt tasks was reasonable. Here, the undisputed facts establish that Kmart's store managers were reasonably expected to devote well over 50 percent of their working hours to managerial and administrative duties, which are delineated in the store manager's job description. Here the undisputed facts reflect that Defendant supplied Musgraves with between 62 and 68 employees at Ridgecrest and approximately 100 employees (including subordinate management personnel) at Big Bear to perform the daily chores necessary to operate, stock, and maintain those stores, and that Kmart paid Musgraves well to manage his subordinates. Musgraves' annual performance reviews reveal that, when he struggled to meet the demands of his job, he was provided with detailed guidance from his district manager regarding areas in which his performance was deficient and was given suggestions for improvement. Musgraves, who provided his own evaluation as part of that process, never once complained that he had inadequate staff to perform the management tasks that were his responsibility. The undisputed facts further demonstrate that Defendant provided online continuing education and training for its managers, but that Musgraves never actually received that training because he improperly delegated participation in the training programs to his human resources assistant. As further evidence that its expectations were reasonable, Defendant has presented the undisputed declaration of Musgraves' district manager, Douglas Cleary, who provided examples of Musgraves' failure to meet reasonable standards.

Because, as discussed in greater detail below, the Court is satisfied that Musgraves has not demonstrated the existence of a genuine issue of material fact regarding Defendant's reasonable expectations, and because the Court concludes that Defendant reasonably expected Musgraves to devote most of his work hours to store management and administration, the Court concludes that Defendant properly classified Musgraves as an exempt employee. For that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

reason, the motion for summary judgment as to all claims is **GRANTED.**

**II.
FACTUAL BACKGROUND**

A. BACKGROUND

Kmart is a national retailer with approximately 100 department stores in California. (Docket No. 46-1 [Plaintiff's Statement of Genuine Disputes ("SGD")] ¶ 1.) Kmart stores typically have numerous sub-departments, such as health and beauty, home office, seasonal items, garden shop, toys, automotive, hardware, kitchen, electronics, furniture, and clothing; some also have a restaurant or pharmacy. (Id. ¶¶ 2–3.) Prior to 2010, Plaintiff worked for Kmart for 22 years. (Id. ¶ 4.) Plaintiff served as Store Manager for three Kmart stores in California, first at the Ontario store, and then at the Ridgecrest location from April 2003 to July 2006, and in Big Bear from August 2006 to June 2010. (Id. ¶¶ 5, 55.) The Ontario and Ridgecrest stores were small to mid-size outlets with annual sales of annualizing approximately $6 million to $7 million. (Id. ¶¶ 5–6.) The Big Bear store had more than twice that annual volume. (Id. ¶ 8.) This lawsuit arises out of Plaintiff's time as manager of the Ridgecrest and Big Bear stores.

B. PLAINTIFF'S JOB AS KMART STORE MANAGER

As Store Manager, Plaintiff was the most senior resident manager at each of his stores. (Id. ¶¶ 56, 89.) At the time that his employment with Kmart ended, Plaintiff was paid an annual salary of $84,207.90. (Id. ¶ 53.) At all times relevant to this lawsuit, he was paid more than twice the minimum wage for full-time employment. (Id. ¶ 52.)

1. GENERAL MANAGEMENT TASKS

In his capacity as Store Manager, Plaintiff was charged with the responsibility for the success or failure of his Kmart store, measured principally by its profitability. (Id. ¶¶ 10, 56.) Plaintiff reviewed daily sales reports and trends for each of the stores' sub-departments, investigated the causes for under-performance compared to projected sales, made corrections to address those causes, and exercised discretion to increase order levels for merchandise that, in his experience, would sell better during certain seasons. (Id. ¶¶ 69, 73, 75.) He was responsible for maintaining inventory levels in his stores by confirming that employees understood how to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

work the inventory and price-checking scanner, referred to as an "RMU unit," and were using it frequently to ensure that products were being accurately measured, priced, and ordered to replenish the shelves. (Id. ¶ 57.) He was responsible for managing the flow of merchandise from the arrival of the daily delivery trucks, including managing the unloading of products off the trucks, and for verifying that the merchandise was accurately "staged," or organized by department on pallets, at the dock, and then moved by forklift to a storage room, storage trailers, or to the store floor. (Id. ¶ 58.) Plaintiff made certain that sale proceeds were timely deposited and that cash and receipts were accurately accounted for, and he worked with loss prevention personnel to run regular safety meetings which employees were required to attend. (Id. ¶¶ 59, 60.) Plaintiff had ultimate responsibility for the stores' compliance with regulatory laws, including pricing accuracy, food safety standards, and age-related sales. (Id. ¶ 36.) At the Big Bear store, Plaintiff exercised decision-making authority regarding the store's participation in charities. (Id. ¶¶ 76–77.)

### 2. EMPLOYEE DIRECTION, SUPERVISION AND TRAINING

Plaintiff managed 62 to 68 employees at Ridgecrest and approximately 100 employees at Big Bear, including three or four assistant managers, a human resources assistant, loss prevention personnel, office personnel, nine to eleven hourly leads, and dozens of hourly associates who worked in customer service, replenishment, and cashiering. (Id. ¶¶ 7, 9.) Kmart's expectation is that store managers will "be out on the floor amongst the associates" to provide "constant supervision," including "consistently observing them, encouraging them, giving them detailed direction, training them, and following up with them to make sure that they know that their performance is being monitored by management." (Docket No. 43-7 [Debber Decl.] ¶ 3; see also Docket No. 43-4 [Cleary Decl.] ¶ 31.) Indeed, Plaintiff testified that he was in "constant" communication with all employees to communicate procedures, priorities, calendars, and timelines, and to assure that these were being followed, often by directly observing employees as they carried out tasks. (Docket No. 46-2 [Westrick Decl.] ¶ 2, Ex. A [Opp. Musgraves Depo.] 464:05–465:09, 465:22–467:19) Plaintiff also conducted a daily "huddle" with the Big Bear associates to discuss issues, goals, and initiatives, and he provided one-on-one coaching to address customer service issues that arose throughout the day. (SGD ¶¶ 31–32.) He often worked side-by-side with employees, and he used these opportunities, in which he led by example, to train and coach them. (Id. ¶ 39; Docket No. 43-2 [Sommerfeld Decl.] ¶¶ 12–14, Exs. J–L [Mem. Musgraves Depo.] 287:07–288:21; Opp. Musgraves Depo. 294:06–22.) Plaintiff was also responsible for managing the store's budget, which included, determining the proper allocation of payroll dollars between the departments within his stores

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

and approving or adjusting the weekly schedule, based on anticipated upcoming demands. (SGD ¶¶ 78–79; Clearly Decl. ¶ 21; Opp. Musgraves Depo. 262:23–263:21.)

Plaintiff acknowledged that, at each of the stores he managed, he took initiative to address deficiencies and improve work processes. At Ridgecrest, he improved the processes for time management, freight flow, stockroom organization, customer service, and store maintenance. (SGD ¶ 11.) Plaintiff worked with his team to improve productivity by "driving results, working with the team, setting the tone [and] rallying the troops." (Id. ¶ 13.) He improved freight flow by mandating that products that belonged in the same department were loaded into the freight area onto the same pallet, and that products were to be staged prior to the replenishment team arriving, so that they were ready to be shelved; insisted on proper counter maintenance so that shelves did not need to be re-arranged and straightened when re-stocked, and employees did not need to search for the proper area for the product; required that merchandise was worked down from the overheads, or risers, to create room for new products; and made certain that the store's inventory was accurate, to avoid overstocking and congestion. (Id. ¶ 14.) To improve stockroom organization, Musgraves, with the assistance of receiving employees, leads and assistant managers, implemented processes so that product was flowing efficiently to the floor, bins and backstock were organized by category and department, and loft areas were organized. (Id. ¶ 16.) He improved customer service by implementing and training associates on the "10 foot rule," which required that any employee who came within 10 feet of a customer greet the customer and offer assistance. (Id. ¶ 17.) Musgraves stated that, rather than training leads and supervisors to train hourly employees on the 10 foot rule, he "worked with everyone." (Mem. Musgraves Depo. 265:10–22; SGD ¶ 18.) He also improved customer service by improving the checkout operations, including by ensuring that service plans, warranties, and credit cards were being offered and that scanning and bagging processes were followed; working up front with and monitoring the cashiers; reviewing reports showing whether cashiers were following the improved processes; and providing further coaching to the cashiers that required it. (SGD ¶¶ 19, 20; Mem. Musgraves Depo. 265:23–268:04.) And to improve store maintenance, Musgraves implemented a daily cleaning schedule that incorporated cleaning into the re-stocking process, and required associates to complete a cleaning checklist. (SGD ¶¶ 21–22.)

Musgraves found that, when he arrived at the Big Bear store, the store was a "disaster." (Id. ¶¶ 23, 25.) Customer complaints were high, and Plaintiff spoke with customers who felt "alienated" and "ostracized" at the store, but were forced to shop there because Kmart had no competitors in the area. (Id. ¶¶ 24, 28.) Employee attitudes were low, customer service was poor, products were not flowing efficiently from the truck to the backroom storage to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

shelves, and the inventory systems were inaccurate. (Id. ¶¶ 25–28.) To improve morale, Musgraves took steps to improve numerous in-store processes, implemented a program of recognition and discipline, and through these means reduced employee turnover. (Id. ¶¶ 29–30.) He improved customer service by spending time at the service and return desk working with the hourly associates, and by coaching assistant managers, leads, and hourly associates on particular issues while on the floor. (Id. ¶¶ 32, 35; Mem. Musgraves Depo. 274:20–277:10.) He coached cashiers on compliance with credit card offers, warranties, and smart plans. (SGD ¶ 33.) Implementing procedures he initiated at the Ridgecrest store, Plaintiff improved the truck unloading process at Big Bear by working with the hourly associates on a daily basis to unload the trucks, while giving them direction on proper staging and organization and coaching them on the better use of equipment, such as rollers. (Id. ¶ 34; Mem. Musgraves Depo. 282:23–283:24.) He improved inventory integrity by ensuring that the RMU unit was used. (SGD ¶ 38.) To comply with regulatory requirements, he ensured that associates completed training; reviewed the pricing audit report; ensured that signs were accurate; made price adjustments; and delegated responsibility for correcting problems with compliance to the unit and pricing manager. (Id. ¶ 36.) In sum, Plaintiff testified that, while at Big Bear, he made certain that the daily truck unloading process was completed in a reasonable amount of time; that store maintenance and customer service were satisfactory; and that the store had inventory integrity. Plaintiff ensured that his process improvements were implemented and followed by working side by side with employees to demonstrate the desired processes, while directing, coaching, and training them. Plaintiff testified that he performed the work himself in order to provide training and direction, but also because his staffing resources were insufficient. (Id. ¶¶ 37–39; Mem. Musgraves Depo. 286:15–288:21, 295:15–297–15.)

**3. RESPONSIBILITY FOR PERSONNEL DECISIONS**

At both the Ridgecrest and Big Bear stores, Plaintiff was responsible for hiring, firing, and promoting hourly employees, and he also made recommendations to his District Manager as to which assistant managers should be hired at his store or promoted within the district. (Cleary Decl. ¶¶ 9–10.) Although Plaintiff testified that he delegated the responsibility for interviewing and selecting hourly employees to assistant managers, and would only "meet and greet" new employees for less than a minute, he did not dispute that he held the authority with respect to hiring, firing, and promotions, and that Kmart's expectation was that he would interview and select the hourly employees. (SGD ¶¶ 62, 70–72; Musgraves Depo. 557:3–14, 544:24–545:17, 558:5–25.) Indeed, Cleary stated that he "expected and believed that Mr. Musgraves was actually interviewing all of [the hourly associate] candidates—not merely 'meeting and greeting'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

them." (Cleary Decl. ¶ 9.) Although Plaintiff sometimes consulted with Cleary or with Kmart's human resources department before making personnel decisions, he could not remember a specific occasion when either disagreed with his plans. (SGD ¶ 71.) Plaintiff alluded to instances in which Cleary recommended termination of certain employees, but Plaintiff did not follow the recommendations. (Mem. Musgraves Depo. 509:02–511:16.) Between 100 and 300 employees were hired at the Big Bear store during Plaintiff's four years as manager there, and Plaintiff personally recommended that at least 10 and as many as 100 employees be terminated. (SGD ¶¶ 63, 67, 68.) Plaintiff was responsible for ensuring that all employees at his stores completed training, and he evaluated the performance of his assistant managers and oversaw these managers' evaluations of their direct reports. (Id. ¶¶ 64, 66.)

### C. PLAINTIFF'S PERFORMANCE DEFICIENCIES AND TERMINATION

Kmart District Managers in California typically supervised eight to ten stores within a district. (SGD ¶ 89.) Until July 2007, Plaintiff's District Manager was Mike Medina. Medina testified that he visited the Ridgecrest store approximately once per month while Musgraves was the Store Manager, and that Musgraves performed his duties "well." (Docket No. 46-3 [Medina Decl.] ¶¶ 3–6, 8.) Medina was responsible for promoting Musgraves to the Big Bear store in July of 2006. (Id. ¶¶ 7–9.) Although there were problems at the Big Bear store, in Medina's view, Musgraves was making improvements. (Id. ¶¶ 10–11.) In July 2007, Cleary replaced Medina as Musgraves' District Manager. Plaintiff did not experience discipline issues in his employment with Kmart until after February 2008, when he sustained an injury while performing manual labor. At an unspecified time, Plaintiff filed a workers compensation claim in connection with this injury. (Musgraves Decl. ¶ 15.)[1]

### 1. PLAINTIFF'S 2007 PERFORMANCE REVIEW

Musgraves' 2007 performance review, completed in April 2008, reflected that he received an overall rating of 2.8 out of 5.0. The review from Cleary was mixed, and contained more negative comments than positive comments. For example, Cleary remarked that "Eferon has made progress[, but] now we need to really drive the consistent day in day out presentation."

---

[1] Plaintiff was injured again in 2010 and filed a second workers compensation claim. In addition to this lawsuit, Plaintiff is currently prosecuting two other lawsuits against Kmart, for workers compensation and for discrimination on the basis of disability, age, and race. (SGD ¶¶ 49–50; Mem. Musgraves Depo. 25:07–30:04; Musgraves Depo. ¶¶ 17–18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

(Docket No. 47-1 [Liao Decl.] ¶ 5, Ex. C [2007 Performance Review] at 3.)  Cleary remarked that "[s]everal of my visits this year have been unacceptable," and "we can not [sic] allow these conditions."  (Id.)  Cleary stated that Musgraves could "achieve more with what he has b[y] consistently and fairly challenging his team," and "some very weak players . . . need to be brought up to speed quickly or let go."  (Id. at 5.)  As a result, the store "still ha[s] a culture of low productivity," and "we can not [sic] be satisfied with where we are."  (Id. at 4.)  In addition, "Eferon . . . needs to let others make some of the decisions," and "[a]t times . . . is too focused on what he has accomplished in the store," and instead "must be honest [that there] is still work to be done."  (Id.)  Thus, overall, Musgraves was "capable," but "needs to become more aggressive in his approach to daily conditions."  (Id. at 7.)

Musgraves' own comments reflected a much rosier view, including that the "[s]tore has gone through a complete transformation in building and aligning a[n] entire new team," and that "[s]ignificant improvements have been made with turnover and we have redefine[d] our culture." (Id. at 4.)  Musgraves assigned himself a score of 4.0, for "high contributor," in most categories, and stated that he "take[s] . . . responsibility for the entire store and its operations," "ha[s] worked diligently to instill[] in his direct reports [Kmart] expectations of accountability," and has "establish[ed] high standards and expectations and challeng[ed] the organization to strive for and achieve greatness."  (Id. at 4–5.)  Musgraves made no complaint that he had inadequate staff or that he was saddled with a disproportionate level of menial tasks.

**2. PLAINTIFF'S 2008 PERFORMANCE REVIEW**

In his 2008 performance review, Musgraves received an overall rating of 3.0 out of 5.0, designating him a "contributor."  (Liao Decl. ¶ 6, Ex. D [2008 Performance Review] at 4.)  He was advised that he had "made major strides" and "shown tremendous growth," and that "[t]he overall team is better."  However, "overall conditions still are not at acceptable levels," "[p]erformance is very inconsistent," and "[n]otable improvements in overall instock, pricing compliance and stockroom standards have to be made."  (Id. at 2, 4.)  Cleary remarked that he had "no doubt that [Musgraves] has seen this store improve since his arrival, however [the] bottom line is the store is not to standard on a day in [and] day out basis."  (Id. at 2.)  Cleary acknowledged that "[t]his store certainly presents some difficult circumstances," but stated that "as a manager that is where your leadership and knowledge come into play."  (Id.)  He noted that "[t]he one area where the store has progressed significantly is the customer service levels," and that "complaints have decreased consistently."  (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

Musgraves again assigned himself a score of 4.0, for "exceeds expectations," in most categories, and stated that he had "worked tirelessly in changing the culture of this store to build an organization that strives for measurable success," and had "hired, trained, identified, and developed individual[s] for key critical leadership roles while establishing high standards of expectations centered around customer service, driving profitable sales, store operations, and people." (Id. at 2.) However, he acknowledged that improvements were needed in the process of controlling inventory levels and in sales. (Id.) Musgraves again made no complaint that he had inadequate staff or that he was saddled with a disproportionate level of duties more appropriately performed by non-exempt staff.

### 3. PLAINTIFF'S 2009 PERFORMANCE IMPROVEMENT PLAN

In 2009 and 2010, Musgraves was placed on performance improvement plans ("PIP"), in large part because his management performance was considered deficient. His 2009 PIP noted a number of problems with the store, including that the replenishment team had low productivity, the stockroom was not maintained to Kmart standards, training and product knowledge was a "continuous struggle," customer satisfaction results were "unacceptable," and general maintenance and presentation were "inconsistent." (Sommerfeld Decl. ¶ 19, Ex. Q [2009 PIP] at 1.) The 2009 PIP noted an inadequate performance with regard to training, monitoring, and evaluating his team. Musgraves was instructed to "spend time daily at the checkouts observing and interfacing with customers and associates alike," "start to tour on a regular basis with the entire management team," "oversee the assignment and delegation of tasks," "be actively involved and oversee the follow-up of the assign[ed] tasks," "establish the standards and expectations for his team," ensure that associate training was completed on time, and "see his assistants['] notes"—because "Eferon cannot run the store by himself." (Id. at 1–2.) Musgraves was advised to "instill[] in his team the expectation and standards so that the store operates as efficiently without him as with him," and that "discipline needs to be fair, firm and consistent." (Id. at 2.) This is because "[e]veryone is a little different and is motivated differently"; however, "as a manager you must identify that and learn how to best approach each individual but [the] expectation must be the same for everyone." (Id. at 2.) Cleary commented that

> Eferon has the experience and knowledge to run his store at a high level. However, Eferon needs to learn to honestly evaluate his store and then correct deficiencies. Eferon needs to develop a consistency on operational process. . . . Eferon needs to evaluate everyone on his team and truly challenge them to a higher standard. If they have been given the tools to do their job and they are still not capable we need to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

make a change. . . . [A] few associates are being asked to carry the load which results
from poor morale and turnover. Training will be key going forward to elevate the
team and you will see results. Same goes for assistant [managers], they need to
elevate their performance.

The PIP stated that Musgraves was "expected and required to show measurable and sustained
improvement throughout the duration of the PIP process." (<u>Id.</u> at 1.) However, follow-up
evaluations in the subsequent months reiterated the same litany of problems. (<u>Id.</u> at 4–11.) One
entry indicated that "since the PIP started Mr. Musgraves has over spent the payroll budget and
continues to do so." (<u>Id.</u> at 10.) The final entry noted improvements in measurable categories,
such as sales, customer satisfaction, and performance on the "mystery shopper" tests. However,
Cleary stated that the store's financial results were still "not satisfactory," and that he was "still
concerned with the consistency at this location." (<u>Id.</u> at 12.)

Musgraves' comments on the PIP form included that

90–95 percent of what is written above in my PIP plan and what is required of me as a
store manager is being done and achieved routinely to what can be documented,
verified, and substantiated. I totally disagree with Mr. Cleary's unabated and unfair
desire to place me on a PIP. Furthermore, I believe his actions were inspired and
motivated by reasons of retaliation for an email I sent to him and copied the regional
manager while on vacation which resulted in hostility from Mr. Cleary. . . . As a 20
year tenor [sic] seasoned manager with a proven sustained track record of success (up
until the last year [and] a half with the down turn in the economy and economic
recession) I have grown sales and profit in every store I've been assigned to and feel
now I'm being unfairly mistreated.

(2009 PIP at 4.)

**4. PLAINTIFF'S 2010 PERFORMANCE IMPROVEMENT PLAN**

However, Musgraves' 2010 PIP, completed a year later, reiterated the same themes as the
2009 version. This PIP stated that Musgraves was not "actively recruiting top talent to build a
stronger organization"; did not "have the correct replenishment team" to ensure "that all freight
w[ould] be worked to the floor within 24 hours"; had "not built a [team] that can manage [its]
work load"; did not "tour and accurately report or record the conditions of his store"; did not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

"ensure all team members understand consequences for personal actions"; did not hold "all team members accountable with clear expectations and direction"; did not "guide his team through difficult situations." (Sommerfeld Decl. ¶ 20, Ex. R [2010 PIP] at 2.) In addition, Musgraves did not implement a daily maintenance program to meet Kmart customers' "minimum expectations," and did not ensure that pricing was 100 percent completed and accurate. (Id.) The PIP noted that "Eferon has been given additional payroll to get his store to clean and bright standards," but that Kmart "ha[s] been unable to certify the store," which "continues to struggle with maintenance, replenishment, backroom standards and counter detail." (Id. at 3.) Indeed, Musgraves' failure to hold his team accountable and to ensure completion of tasks in a timely manner "has resulted in a store that does not meet company expectations in appearance and performance." (Id.) Musgraves was required to implement changes, including touring the store daily and keeping detailed notes, and to complete "leadership training" from Kmart University, including courses on management, leadership, and communication skills, and on developing capabilities and store operations. (Id. at 2–3.) Plaintiff received this PIP the day he returned to work from taking three weeks off to receive medical treatment for his March 2010 workplace injury. His employment was terminated 90 days later. (Opp. Musgraves Depo. 698:02–11.) Kmart's Vice President and General Manager of Retail Sales with responsibility over the district that included Big Bear during the relevant time period, Steve Debber, stated that Musgraves "was not meeting Kmart's expectations for the Big Bear store," and that, since his replacement, "that store's profitability and appearance has increased." (Debber Decl. ¶ 5.)

**5. CLEARY'S COUNSELING**

Cleary counseled Musgraves on several occasions during his tenure at Big Bear that his team's productivity levels were inadequate and that he did not appropriately manage poor performers on his team. (Cleary Decl. ¶¶ 18, 24.) For example, Musgraves' replenishment team unstocked 15 to 16 cases per hour, compared to the corporate goal, based on the manpower used, of 29 to 39 cases. Cleary "encouraged [Musgraves] to train his replenishment team to be more efficient and, if they could not meet expectations, . . . to terminate their employment and hire more competent workers." (Id. ¶ 18.) He also encouraged Musgraves to schedule the replenishment shift for the early morning, rather than overnight, so that he and assistant managers would be available to supervise; however, Musgraves "was reluctant to do this and resisted for months." (Id. ¶ 19.) Despite Musgraves' assurances that he could motivate and train the existing team, the replenishment team "did not substantially improve." (Id. ¶ 18.)

Cleary observed that Musgraves was "not comfortable dealing with poor performers," and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|----------|------------------------|------|----------------|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

to dissuade Musgraves from covering for poor performers Cleary unambiguously counseled Musgraves that he "could not and should not do the hourly employees' tasks himself, but must delegate tasks and follow up to ensure that they are accomplished correctly." (Id. ¶¶ 24, 33.) Although he encouraged Musgraves to spend 90 percent of his time on the floor and 10 percent of his time in the office, he never instructed Musgraves to do the work of hourly employees because doing so would not make the store successful. (Id. ¶ 27.)

### 6. PLAINTIFF'S FAILURE TO COMPLETE MANAGEMENT TRAINING

Musgraves admitted that, throughout his tenure as a Kmart Store Manager, he did not perform his ongoing online management training obligations, but asked his human resources assistant to login and complete the modules in his stead. (SGD ¶¶ 42–48; Mem. Musgraves Depo. 204:01–24, 206:10–208:11, 219:08–225:01; Sommerfeld Decl. ¶ 15, Ex. M [Training List].) Musgraves stated that this was a common practice among Kmart managers. (Opp. Musgraves Depo. 208:20–23, 209:11–13, 210:3–6, 210:19–23, 211:21–24, 213:07–13.) Cleary testified that, had he known that Musgraves did not personally complete his training, he would have taken corrective action. (Cleary Decl. ¶ 8.) During his four years at the Big Bear store, Plaintiff never earned a bonus from Kmart, which was available to store managers whose stores met certain criteria. (SGD ¶ 54.)

### D. MUSGRAVES' CONTENTIONS REGARDING PERFORMANCE OF NON-EXEMPT TASKS

Musgraves contends that he worked more than half of his time on non-exempt tasks and presents evidence in support of that contention. Although his testimony to that effect is highly implausible, given the undisputed facts regarding the managerial and administrative tasks he performed during his tenure as manager of the Ridgecrest and Big Bear stores, the Court assumes the truth of his testimony for purposes of this motion. However, in light of the other undisputed facts in the record before the Court, any dispute regarding what he actually did is immaterial. As discussed below, the undisputed facts substantiate Defendant's claim that Musgraves' job duties were predominantly managerial in nature and that Defendant's expectation that he would spend more than half of his time performing those duties was reasonable given the resources, training, support provided Musgraves, and the pay he received for performing those duties. Nonetheless, in the interests of a complete record, the Court will briefly outline Musgraves' testimony regarding the duties he contends he performed during the relevant time period.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|----------|----------------------|------|---------------|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

### 1. ALLEGED PERFORMANCE OF NON-EXEMPT DUTIES

Notwithstanding Plaintiff's assertion that he performed numerous management responsibilities during the relevant time period, he contends that he spent approximately 52 to 86 percent of his time performing manual labor and other tasks assigned to non-exempt, hourly employees. (Docket No. 46-4 [Musgraves Decl.] ¶¶ 9–10.) Given that Plaintiff worked an average of 67 hours over the course of six days every week, on an average 11-hour, 10-minute workday, that would equate to between 5 hours and 50 minutes, or 52 percent of his time, and 9 hours and 40 minutes, or 86 percent of his time, engaged in manual labor tasks. (Musgraves Decl. ¶¶ 7, 9–10.) Accordingly to Musgraves, these tasks included driving a forklift to unload shipments, organizing the stockroom, moving pallets of merchandise out of the stockroom, restocking shelves, setting up displays, placing signs on merchandise, straightening the store counters, and even bagging merchandise and providing assistance to customers. (SGD ¶ 90; Musgraves Decl. ¶ 8; Mem. Musgraves Depo. 242:04–243:24; Opp. Musgraves Depo. 255:16–259:13, 264:04–23, 266:15–18, 283:2–5, 286:19–288:07, 288:17–21, 294:06–22, 322:25–323:04, 440:13–21, 441:15–25.) Plaintiff regularly spent an hour a day cleaning; two to three hours per day unloading trucks; one to two hours per day moving incoming products onto pallets and pallets onto the sales floor; 30 minutes per day organizing the stockroom; and additional time placing clothes on hangers and onto the sales floor. (Opp. Musgraves Depo. 353:12–346:06, 445:05–446:01, 583:02–24, 589:22–590:13, 606:07–607:02, 609:16–25.) Plaintiff spent seven to ten hours per week setting up displays and fixtures, and another one to three hours per week bringing seasonal products in from storage trailers outside the store. (Id. 591:20–592:05, 593:21–25, 603:23–604:04, 605:04–606:02.)

Plaintiff states that his time spent on manual tasks typically increased during the holiday season, when more products were delivered to the stores. (Musgraves Decl. ¶ 13.) Plaintiff first became aware that he was spending more than half of his time on these types of non-exempt tasks when he began his tenure as manager of the Ridgecrest store. (Mem. Musgraves Depo. 21:10–21.) He does not explain how he managed to complete his management duties while performing these numerous, non-exempt tasks.[2]

---

[2] Plaintiff provides the Court with additional lengthy descriptions of the many menial tasks he performed during the relevant time period. See, e.g., Opp. Musgraves Depo. 240:21–241:04, 241:17–20, 242:04–14, 255:16–259:13, 260:2–10, 262:23–263:21, 288:17–21, 294:06–22, 376:15–20, 440:13–21, 441:15–25, 447:25–448:12; SGD ¶ 15; Opp. Musgraves Depo. 282:02–05, 286:19–287:03, 287:07–17, 287:24–288:07.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

### 2. PERFORMANCE OF MANAGERIAL TASKS

It follows that if Musgraves were actually spending most of his time on non-exempt tasks, he could not have spent time managing his stores. He testified to that effect, which no doubt goes a long way to explaining his performance reviews. For example, Musgraves claims that he reviewed sales reports for only 15 to 30 minutes per day; reviewed the cash daily balancing form, reflecting bank deposits, credit card sales, accounts receivable, and cash on hand, for one minute per day; reviewed pricing accuracy reports for 10 to 15 minutes per day; and reviewed the store's profit and loss reports for no more than one hour per month. (Opp. Musgraves Depo. 459:19–460:01, 463:09–18, 569:09–572:15, 594:06–10, 613:02–6.) He reviewed the merchandise-receipt report and followed up on discrepancies for 10 to 15 minutes per week, and reviewed the accounts receivable report for five minutes per week. (Id. 582:24–583:02, 578:12–24.) Daily huddles with staff occupied less than five minutes. (Id. 470:16–18.) Scheduling employees took no more than an hour per week. (Id. 569:01–08.) Plaintiff monitored his store's payroll budget and responded to communications from Kmart management regarding being over budget for up to 10 hours per month. (Id. 575:17–576:20.) He spent 15 to 45 minutes per week participating in conference calls with his District Manager and the other store managers in his district, and approximately one hour per month in store safety meetings. (Id. 594:24–595:16.) Although he was in constant communication with his assistant managers, he met with them all together perhaps once a month, for 10 to 20 minutes. (Id. 595:17–596:06.) Annual evaluations of Plaintiff's assistant managers required perhaps an hour to complete, per evaluation, and subsequent participation in a one-day meeting with other store managers. (Id. 479:07–25, 512:03–16.) Plaintiff's participation in reviews of hourly employees required only "seconds, minutes." (Id. 512:17–19, 517:14–20.) Plaintiff testified that, during his four years at Big Bear, he reviewed approximately 50 accident reports; including any follow-up action, this review took approximately 10 to 30 minutes. (Id. 615:16–619:03.) He spent 30 minutes each week reviewing the compliance reports for the in-store restaurants and touring the areas. (Id. 619:04–620:25.) Plaintiff has presented evidence that, during the four years that he managed the Big Bear store, Kmart never inquired into how store managers performed their duties, including by conducting surveys or by taking questionnaires or reports. (Westrick Decl. ¶¶ 4–5, Exs. C, D.)

### 3. ALLEGED BUDGET LIMITATIONS

Musgraves presents a somewhat desultory argument regarding budgeting inadequacies. According to Musgraves, Kmart's allocation of payroll dollars was driven by anticipated sales

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

and could be increased if sales exceeded the sales plans and to accommodate major initiatives. (Cleary Decl. ¶ 22.) However, Plaintiff complains that, the number of subordinate employees notwithstanding, Kmart's allocations were frequently inadequate and often were not increased. (Musgraves Decl. ¶ 14; Mem. Musgraves Depo. 585:10–586:08; Opp. Musgraves Depo. 260:02–10, 262:23–263:21, 376:15–20, 385:10–386:08, 440:13–21, 441:15–21.) Thus, although Plaintiff exercised discretion to move allocated resources from "one bucket to another bucket," he could only "rob[] Peter to pay Paul," and could not increase or exceed his overall resource allocation. (Mem. Musgraves Depo. 260:02–10, 262:23–263:21.) Indeed, Plaintiff would be chastised if he exceeded his payroll allocation, and in fact was formally disciplined, on one occasion, for exceeding his payroll budget. (Musgraves Decl. ¶ 14; Westrick Decl. ¶ 3, Ex. B [12/7/07 Notice of Corrective Action].) However, Cleary on at least some occasions approved requests by Plaintiff to increase the payroll dollar allocation at the Big Bear store. (Cleary Decl. ¶ 22.) The undisputed facts establish that, on at least one occasion, Plaintiff was given permission to increase his payroll allocation to accommodate an unexpected additional delivery, and was told to "use discretion." (Id. ¶ 22, Ex. A; Mem. Musgraves Depo. 387:12–398:03.) Furthermore, the Big Bear store was at times permitted to borrow employees from other stores to assist with stockroom reorganization. These employees were paid out of the payroll budgets for their home stores. (SGD ¶ 83.)

**III.**
**ISSUES PRESENTED**

The motion presents essentially one question: whether Defendant has presented undisputed facts showing that it correctly classified the store manager position as "exempt" under California law. The answer to that question turns on whether, given the stated duties and responsibilities of a store manager and the resources provided to operate the store, Kmart had a reasonable expectation that its store manager would have more than half his time to devote to exempt duties. Musgraves contends that the case should proceed to trial because he asserts that he has shown the existence of a genuine issue of material fact that must be resolved by a jury. In sum, he claims to have shown the existence of a material fact by: (1) offering his testimony that he spent more than half his time performing non-exempt tasks; (2) showing that, during the relevant time period, no surveys, questionnaires, or inquiries were undertaken to determine the job duties of store managers; (3) his prior district manager, who supervised him before his transfer to Ridgecrest, gave him positive reviews; and (4) his claim that District Manager Douglas Cleary discriminated and retaliated against him, which purportedly negates any claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

that "there was any concrete expression of employer displeasure over" his substandard performance. <u>Ramirez</u>, 978 P.2d at 13. The Court addresses these issues below.

**IV.
DISCUSSION**

**A. LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, when addressing a motion for summary judgment, the Court must decide whether there exists "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. <u>Id.</u> at 256. The moving party can meet this burden by presenting evidence establishing the absence of a genuine issue or by "pointing out to the district court . . . that there is an absence of evidence" supporting a fact for which the nonmoving party bears the burden of proof. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). To defeat summary judgment, the nonmoving party must put forth "affirmative evidence" that shows "that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256–57. This evidence must be admissible. <u>See</u> Fed. R. Civ. P. 56(c), (e). The nonmoving party cannot prevail by "simply show[ing] that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must show that evidence in the record could lead a rational trier of fact to find for it. <u>See id.</u> at 587. In reviewing the record, the Court must believe the nonmoving party's evidence, and must draw all justifiable inferences in its favor. <u>Anderson</u>, 477 U.S. at 255.

**B. APPLICATION**

Plaintiff's First Amended Class Action Complaint ("FAC") asserts claims for violations of (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) Labor Code sections 201 and 202 (wages not paid on termination); (3) Labor Code section 226(a) (improper wage statements); (4) Labor Code sections 226.7(a) and 512(a) (unpaid missed meal and rest breaks); and (5) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code sections 17200 <u>et seq.</u> (Docket No. 13 [FAC].) Kmart moves for summary judgment as to all claims. (Docket No. 43 [Mem.].) To defeat the motion, Plaintiff must show that a genuine issue of material fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
| --- | --- | --- | --- |
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

exists as to whether he was correctly classified as an exempt employee. As explained in greater detail below, the Court concludes that he has not done so.

### 1. PLAINTIFF'S CLAIM FOR UNPAID OVERTIME WAGES

#### a. *Legal Standard*

California Labor Code section 510 requires that non-exempt employees be paid overtime for work in excess of eight hours in a day and 40 hours in a week. Cal. Lab. Code § 510(a). The legal standards for classification of exempt employees in California is provided by the Industrial Welfare Commission's Wage Order No. 7-2001 ("Wage Order 7"). Under Section 1(A)(1), an employee is properly classified as exempt under the "executive" or "managerial" exemption if the following criteria are met: (1) the employee's duties and responsibilities involve the management of the enterprise, or a recognized department or subdivision; (2) the employee customarily and regularly directs the work of two or more employees; (3) the employee has the authority to hire or fire other employees, or the employee's suggestions and recommendations as to hiring, firing, or other changes in status are given particular weight; (4) the employee customarily and regularly exercises discretion and independent judgment; (5) the employee is "primarily engaged" in executive or managerial duties, as these are defined in the Code of Federal Regulations; and (6) the employee is paid no less than two times the state minimum wage for full-time employment, or at least $2,773.33 per month, on a salary basis. Wage Order 7, § 1(A)(1), Cal. Code Regs. tit. 8, § 11070(1)(A)(1) (2012).

Exempt managerial activities include (a) interviewing, selecting, and training employees; (b) setting their rates of pay and hours of work; (c) directing, planning, and apportioning their work; (d) maintaining their production or sales records for use in supervision or control; (e) handling complaints, grievances, and discipline; (f) determining the type of materials, supplies, machines, or techniques to be used or the type of merchandise to be bought, stocked, and sold; (g) controlling the flow and distribution of materials or merchandise; and (h) providing for the safety of the employees and the property. 29 C.F.R. § 541.102(b). Duties that are directly and closely related to exempt work are also exempt. Wage Order 7, § 1(A)(1)(e), Cal. Code Regs. tit. 8, § 11070(1)(A)(e) (2012).

Under Section 1(A)(2), an employee is exempt under the "administrative exemption" if the following criteria are met: (1) the employee's duties and responsibilities involve the performance of office or non-manual work directly related to the company's management

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

policies or general business operations; (2) the employee customarily and regularly exercises discretion and independent judgment; (3) the employee performs work requiring special training, experience, or knowledge under general supervision only; (4) the employee is primarily engaged in duties that meet the test of the exemption; and (5) the employee's monthly salary is equivalent to no less than two times the state minimum wage for full-time employment. Wage Order 7, § 1(A)(2), Cal. Code Regs. tit. 8, § 11070(1)(A)(2) (2012).

### b. Application

Musgraves concedes that his job employment met all but one of the requirements for exemption. That is, Musgraves was the most senior resident manager at both the Ridgecrest and Big Bear Kmart stores and was responsible for the stores' success or failure, including profitability. He customarily directed the work of 60 to 100 employees, exercised authority to hire and fire, regularly used discretion and independent judgment in running his stores, performed work requiring experience and knowledge under general supervision only, and was paid more than the minimum salary required for exempt status. The only dispute is whether Plaintiff was "primarily engaged" in exempt duties.

The phrase "primarily engaged" means that "more than one-half of the employee's work time" is spent performing exempt duties. Wage Order 7, § 2(K). California law permits "tacking" of one type of exempt work with another type, so that an employee who spends more than 50 percent of his or her work time performing exempt managerial and exempt administrative work meets the "primarily engaged" test, and is exempt. Division of Labor Standards Enforcement, Opinion Letter 2003.05.23, at 5, available at http://www.dir.ca.gov/dlse/opinions/2003-05-23.pdf. In determining whether this part of the exemption test is met, "[t]he work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered." Wage Order 7, § 1(A)(1)(e), Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e) (2012); see also Ramirez, 978 P.2d at 13; In re United Parcel Service Wage and Hour Cases, 118 Cal. Rptr. 3d 834, 1021 (Ct. App. 2010).

In Ramirez, the California Supreme Court addressed the "outside salesperson" exemption, but its analysis is applicable to other exemptions. By inquiring into the realistic requirements of the job, the court avoids two pitfalls:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

> On the one hand, if hours worked [on exempt tasks] were determined through an
> employer's job description, then the employer could make an employee exempt from
> overtime laws solely by fashioning an idealized job description that had little basis in
> reality.  On the other hand, an employee who is supposed to be engaged in [exempt]
> activities during most of his working hours and falls below the 50 percent mark due to
> his own substandard performance should not thereby be able to evade a valid
> exemption.

Ramirez, 978 P.2d at 13.  When inquiring into the realistic requirements of the job,

> the court should consider, first and foremost, how the employee actually spends his or
> her time.  But the court should also consider whether the employee's practice diverges
> from the employer's realistic expectations, whether there was any concrete expression
> of employer displeasure over an employee's substandard performance, and whether
> these expressions were themselves realistic given the actual overall requirements of
> the job.

Id.

The Court proceeds on the basis of Plaintiff's testimony that he actually spent 52 to 86
percent of his time performing manual labor and other non-exempt tasks, because Kmart has
submitted no evidence to the contrary.  There is no dispute that Kmart expected its store
managers to spend the majority of their working hours performing managerial duties, such as
hiring, training, and directing employees; making and implementing decisions as to how to
effectively run the stores; reviewing the store's financial data; and creating schedules to meet the
stores' needs.  However, Plaintiff argues that there are genuine factual disputes as to whether
Kmart expressed sincere displeasure with his management performance, whether Kmart's
expectations of its managers were realistic, and whether any expression of displeasure was
realistic given the actual demands of the management job.  (Docket No. 46 [Opp.] at 16–20.)

Plaintiff argues that Kmart's expression of displeasure with his work in the final years of
his tenure was insincere, because Medina was pleased with Plaintiff's performance at
Ridgecrest, promoted him to management of the higher-volume Big Bear store, and observed
that, in Musgraves' first year at that store, he made improvements in a difficult environment.
According to Plaintiff, his reviews for 2007 and 2008 were positive, and he was disciplined only
after filing workers compensation claims against Kmart.  He variously asserts that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

performance improvements plans were created in retaliation for the workers compensation claims, out of Cleary's discrimination against him based on his age and race, and out of retaliation for an e-mail Musgraves sent to Cleary and copied to the Kmart regional manager challenging Cleary's decisions while managing the Big Bear store in Plaintiff's stead in 2009. (Id. at 16–18; see Musgraves Decl. ¶¶ 15–18; Opp. Musgraves Depo. 650:08–658:13.) Both PIPs were created while Musgraves was out of the office, the first time on vacation, and the second time for medical treatment for his injury. Plaintiff argues that neither PIP expresses dissatisfaction that he was performing too many non-exempt tasks. (Opp. at 18.)

However, Plaintiff mischaracterizes the quality of his 2007 and 2008 performance reviews and the timeline under which he received his 2009 PIP. The 2007 and 2008 reviews were mediocre, at best, and identified numerous problems existing at Plaintiff's store and with Plaintiff's management practices. In these reviews, Cleary evaluated the overall conditions at the Big Bear store to be "inconsistent" and "unacceptable," and made strong recommendations regarding the need for Plaintiff to tour his stores on a daily basis, provide better training and coaching to staff to enable them to perform their jobs and to make decisions, and replace underperforming employees. Not surprisingly, Plaintiff's self-evaluations painted a much rosier picture. Plaintiff filed his first workers compensation claim at an unspecified time after he was injured in February of 2008, yet he was not placed on a performance improvement plan until August of 2009. He was disciplined for exceeding payroll prior to his injury, in December of 2007. (12/7/07 Notice of Corrective Action.) Although Plaintiff received his 2010 performance review the day that he returned from three weeks off for medical treatment for his second workplace injury (see Opp. Musgraves Depo. 698:02–11), this PIP reiterated the same themes expressed in each of Plaintiff's three previous reviews. Thus, these reviews demonstrate that, for more than three years, Plaintiff was not meeting the expectations of his job. The record before this Court is devoid of any evidence that Cleary acted with discrimination, on any basis, against Plaintiff. Indeed, there is no evidence at all the Cleary or Kmart acted precipitously or out of any sense of ill will. Rather, the record emphatically shows that Kmart and Cleary informed Musgraves of their concerns, counseled him on ways to make improvements and gave him several years to show that he could perform to the company's expectations. Musgraves failed to heed the advice he received, failed to take advantage of training opportunities, and found fault in others rather than acknowledge that he needed to overcome his own shortcomings. There is simply no genuine issue of material fact for trial on Musgrave's assertion that Kmart's expressions of displeasure with his performance were insincere.

Nor has Plaintiff demonstrated that there is a genuine issue as to whether Kmart's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|---|---|---|---|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

expectations that he would spend most of his time engaged in management duties, or its expressions of displeasure regarding his management performance, were unrealistic given the actual demands of his job. Plaintiff has presented only his own—extensive—testimony that he was allocated insufficient payroll to complete the daily store tasks and to make the improvements necessary at Ridgecrest and Big Bear. He states in conclusory fashion that Cleary would discipline him over the phone if he ever exceeded his payroll budget, and provides evidence that he was once formally disciplined, in 2007, for doing so. (Musgraves Decl. ¶ 14; 12/7/07 Notice of Corrective Action.) But there were later increases in payroll allocations for the Big Bear store, and, more importantly, Plaintiff's 2009 and 2010 PIPs indicated that he overspent his payroll budgets, received budgetary increases, yet he and his store continued to under-perform. (Clearly Decl. ¶ 22; 2009 PIP at 10; 2010 PIP at 3.) The budget argument is a red herring.

Musgraves also argues that Kmart has no basis to believe that its expectations for store managers were realistic, because district managers visited the stores infrequently, and the company never inquired into how store managers spend their time, such as by conducting surveys. (Opp. at 18–19; Westrick Decl. ¶¶ 4–5, Exs. C, D.) However, Plaintiff has drawn the Court's attention to no evidence that other Kmart managers faced similar difficulties. Moreover, the undisputed evidence in this case—including Plaintiff's own testimony, the content of his performance reviews, and Cleary's declaration—suggests that the Big Bear store's under-performance was likely a direct result of Plaintiff's choice to spend significant amounts of time engaged in manual and other non-exempt tasks, rather than properly hiring, training, supervising, and directing his assistant managers and hourly associates. That is, the record in this case indicates that, had he more effectively managed his employees, he would not have found it necessary to do their work himself.

The Court observes, additionally, that Plaintiff's testimony is somewhat contradictory. On the one hand, he testified that, through his effective management, he implemented vast improvements at the Ridgecrest and Big Bear stores. On the other hand, Plaintiff testified that, on a daily basis, he spent more than half, and often nearly 90 percent, of his time engaged in non-exempt tasks such as unloading freight, restocking shelves, and assisting customers. It is difficult for the Court to fathom how the operation of retail stores employing 60 to 100 employees could drastically improve while their most senior manager occupied himself by performing the tasks of the lowest-level employees. Either Plaintiff did not so occupy himself, or his stores did not perform as well as he believes.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

In sum, Plaintiff has not demonstrated that there is a genuine issue as to whether Kmart's expectations were unreasonable.  Rather, the record demonstrates only that Kmart expected managers to manage their stores, and that Plaintiff failed to adequately perform.  Accordingly, Kmart's motion for summary judgment is **GRANTED** as to the claim for unpaid overtime.

### 2. PLAINTIFF'S REMAINING CLAIMS

Plaintiff's claims for violations of Labor Code section 226(a) (improper wage statements) and sections 226.7(a) and 512(a) (unpaid missed meal breaks and unpaid missed rest breaks) fail for the same reason that he has not demonstrated that there is a genuine issue as to whether he was misclassified as an exempt employee.  Plaintiff's claim for violation of Labor Code sections 201 and 202 (wages not paid upon termination/waiting time penalties) primarily rests on his purported misclassification, and fails in this regard for the same reasons.  (See FAC ¶ 47.)  In Opposition, Plaintiff argues that this claim survives independently, because he testified that he did not receive all of his regular salary wages immediately upon termination, as required by Labor Code section 201(a).  (Opp. at 20.)  Specifically, Plaintiff testified that he received one check on the day that he was terminated, for an amount that he felt was "possibly incorrect," and that he received an unspecified direct deposit "a few weeks later," which he believes still did not include payment for roughly 10 to 14 days of vacation and two days of personal time that he had accrued.  (Liao Decl. ¶ 7, Ex. E [Reply Musgraves Depo.] 135:17–137:17.)  Plaintiff's testimony is speculative, and does not create a triable issue as to whether Kmart violated Section 201.  Plaintiff's UCL claim is derivative of all other claims.  For these reasons, Kmart's motion for summary judgment is **GRANTED** as to Plaintiff's remaining claims.

### 3. PLAINTIFF'S FAILURE TO ITEMIZE ALLEGED DAMAGES

The Parties engage in extensive debate as to whether summary judgment may be granted to Kmart on the basis that Plaintiff failed to comply with the requirement under Federal Rule of Civil Procedure 26 that he provide a computation of each category of damages claimed and make available for inspection the evidence on which the computations are based.  (See Mem. at 20–22; Opp. at 23–24; Docket No. 47 [Reply] at 9–10); Fed. R. Civ. P. 26(a)(1)(A)(iii).  In light of the determination that Kmart is entitled to summary judgment on the merits of Plaintiff's claims, the Court declines to address this possible alternative basis.

**V.**
**CONCLUSION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-0625 GAF (JEMx) | Date | July 19, 2012 |
|----------|----------------------|------|---------------|
| Title | Eferon Musgraves v. Sears Holding Management Corporation et al | | |

     Based on the foregoing discussion, Kmart's motion for summary judgment is **GRANTED**.

     **IT IS SO ORDERED.**